### STRAND v. GRIFFITH et al.

(Circuit Court, D. Minnesota, Fourth Division. June 19, 1901.)

NEW TRIAL—GRANTING TO SINGLE DEFENDANT—WHEN PROPER.

Under the practice in the federal courts, a new trial may be granted to one defendant in an action, and the verdict and judgment be allowed to stand against others, where there is no reason for granting a new trial as to them; but where it appears that on the trial evidence was introduced as to transactions between the plaintiff and a defendant against whom the evidence is insufficient to sustain the verdict, which evidence would not have been competent against his co-defendants, but which may have enhanced the damages awarded, a new trial will be awarded as to all defendants.

At Law. On motion for new trial.

Henry J. Gjertsen, for plaintiff.

A. B. Jackson and Mark L. Dougherty, for defendants.

LOCHREN, District Judge. The several petitions of the defendant Griffith and of defendants Buck and Campbell for a new trial of the above-entitled cause were heard on May 11, 1901, when counsel for the respective parties submitted oral arguments, since supplemented by briefs. The cause was tried at the present March term of this court, and resulted in a verdict in favor of the plaintiff against the defendants Buck, Campbell, and Griffith (who were the only defendants served) for the sum of $2,000; a previous trial having ended by a disagreement of the jury. The complaint alleged: That on and prior to the 29th of October, 1896, the plaintiff, being a resident of the state of Washington, and the owner of described

real estate of great value, there situate, and desirous of engaging in the retail dry-goods trade at New Whatcom, in that state, but having no experience in that business, or knowledge of the value of such goods, the defendants, knowing of all these facts, for their mutual profit and gain, fraudulently conspired together to cheat and defraud the plaintiff out of his said real estate by false and fraudulent representations as to the quality, quantity, value, ownership, condition, and character of a stock of dry goods, clothing, furnishings, and notions which they then had, in closed boxes, in said Griffith's warehouse; which conspiracy they successfully carried out by such false representations, among which were representations that said goods were owned by defendant Skinner; were new, up to date, and first-class; and that defendant Griffith, on the security of said goods, had loaned to said Skinner $3,500, which must be paid; and that the stock was worth $11,000 at wholesale invoice prices. That by various specified artifices of the defendants the plaintiff was prevented from examining said goods, giving said Skinner plaintiff's promissory notes for $3,700, and a conveyance of three tracts of said land, worth $7,300, therefor; and agreeing to leave the said goods in said warehouse till the notes were paid. That, being unable to pay said notes, he afterwards obtained the goods of said Griffith by giving him a chattel mortgage thereon and upon other goods, and a mortgage on the remaining tracts of his real estate. That the goods, upon being received by plaintiff and opened, were found to be old, shelf-worn, moth-eaten, and unsalable, and not worth more than 10 per cent. of said sum of $11,000; and were afterwards mostly taken from him by said Griffith, as was also the remainder of such real estate, by foreclosure of said mortgages.

This application for new trial must turn, so far as defendant Griffith is concerned, upon the question whether there was any evidence in the case which justified the jury in finding that he had any participation in the alleged conspiracy. It appeared that he was, and for many years had been, a warehouseman in the city of Minneapolis; that he is a man of considerable wealth, and sometimes made loans on the security of goods deposited in his warehouse; and that the defendants Buck and Campbell, who were merchandise brokers of said city, had rented from Griffith a room in his warehouse, which was entirely under their own control, and in which they had at that time the said goods in boxes. There is no evidence that Griffith had any ownership or interest in these goods, or any knowledge concerning them, except a general knowledge that Buck and Campbell had goods of some description in their rented room; or that he had any part or knowledge in or about the alleged conspiracy, or any information of the bargaining or sale of the goods to plaintiff, or of the existence of the plaintiff; or any participation in or knowledge of the transaction whatever until after the sale of the goods, except delivery, had been completed, and the notes of plaintiff and deed of the three parcels of land made to Skinner, when the plaintiff applied to Griffith for a loan of $3,700 on the security of the goods, except the testimony of the plaintiff and of A. W. Strand that Buck and Campbell stated to plaintiff during the

negotiations that Griffith had loaned Skinner $3,500 on the security of the goods so in his warehouse, and their further testimony that, when the plaintiff was negotiating with Griffith for the loan to himself, Griffith stated to him that he was making a good purchase, and that the goods were valuable, else he would not have made the loan to Skinner upon them. In respect to these matters, these witnesses are squarely contradicted by Buck, Campbell, and Griffith. And from the testimony of plaintiff and A. W. Strand, as well as of others, it appears without question that when plaintiff first applied to Griffith for the loan to himself, at Griffith's warehouse, Griffith did not assent to the request, but told plaintiff that he would consider it; and it appeared that it was after conferring with Buck or Campbell concerning the goods, and with Mr. Brown, his own bookkeeper, that, upon plaintiff's calling again, with A. W. Strand, on the following day, he consented to make the loan of $3,700 on the security of the goods. If there were no reason to question the truthfulness of the plaintiff and A. W. Strand in respect to the statement of Griffith as to the goods being valuable, else he would not have made the loan on them, I am constrained to believe that such statement, if made by Griffith, was made with reference to the loan which he was then making to the plaintiff, after having made such inquiry as satisfied him that the goods were sufficient security; and that the Strands were mistaken if they understood him to refer to any other loan. Moreover, had Griffith been in the conspiracy, he must have known that he had been represented as having loaned $3,500 to Skinner on the goods, and would immediately, to forward the matter, have consented to transfer the loan—which, in its nature, would remain a fictitious loan—to Strand, keeping the goods till the money, for the use of the conspirators, should be paid by plaintiff. Nothing would be required but a change or transfer of the notes given by plaintiff to Skinner, and delivery and pledge of the warehouse receipt for the goods. The money would, in such case, ostensibly be retained by Griffith for the payment of his alleged previous loan to Skinner. But the evidence does show that Griffith actually made inquiry to satisfy himself as to the value of the goods before consenting to the loan to plaintiff; that he gave Buck and Campbell a check for the money so loaned, to pay on behalf of plaintiff the money consideration of the purchase, for which purpose the money was borrowed; that he gave the plaintiff his warehouse receipt for the goods in the boxes, receiving the same back in pledge for the loan; and that plaintiff then helped nail up the boxes, which were at once, while the parties were there, elevated from Buck and Campbell's leased room to rooms in Griffith's own control in his warehouse. Further, the evidence shows that Griffith's suit for foreclosure of his mortgage in the state of Washington was contested by Strand, who, in his answer in that suit, made substantially the same allegations of fraud in respect to the sale to him of said goods which are now set forth in his complaint in this action. But he did not charge in that answer that anybody had represented to him that Griffith had made any loan on the goods to Skinner. This leaves room for the suspicion that such charge in

this action is an afterthought. Aside from what I have referred to, there is no scintilla of evidence tending to connect Griffith with the goods, or with their sale to the plaintiff, or with the alleged conspiracy. All the other evidence, and every circumstance, shows that he had no such connection. The jury should have been instructed to return its verdict in his favor; and as to him a new trial must be granted.

As to defendants Buck and Campbell, there was sufficient evidence to go to the jury, and the question remains whether a new trial ought to be granted to Griffith, and the verdict and judgment allowed to remain against them. In this country, and especially in the federal courts, the common-law rule that, if a new trial is granted to one defendant in action in tort it must be granted to all the defendants, does not obtain; and a new trial may be granted to one defendant in such action, and the verdict and judgment be allowed to stand against the others, where there is no special reason for granting a new trial as to them. Albright v. McTighe (C. C.) 49 Fed. 817; Gaslight Co. v. Lansden, 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543. In each of these two cases, however, the court granted a new trial to all the defendants, while holding that there was sufficient evidence to sustain the verdict as to some of them; for the reason that evidence was received as to the wealth and ability to respond in damages of defendants to whom a new trial must be granted, and the court could not say that the amount of damages awarded had not been enlarged because of such evidence; and that it was possible, and even probable, that the verdict would have been less had the case been submitted against the defendants as to whom the evidence was sufficient alone. In this case the evidence showed that Griffith was a man of considerable wealth, and it also disclosed his transactions with plaintiff in the state of Washington, whereby he obtained mortgages upon said goods and other goods, and on considerable real estate of plaintiff, and his foreclosures of such mortgages; all matters in which Buck and Campbell had no concern, but whereby plaintiff claimed to have lost property to a large amount. None of this evidence could have been heard had the case been tried against Buck and Campbell alone; and still it is not improbable that it influenced the jury, and increased the verdict actually rendered; and therefore, under the rule stated in the two cases cited, I feel constrained to grant a new trial as to all the defendants. Ordered, that the verdict and judgment be vacated and set aside, and a new trial granted as to all the defendants.