M. BURTON V. R. B. ROBERSON ET AL.

No. 7920. Decided July 15, 1942.
Rehearing overruled October 7, 1942.
(164 S. W., 2d Series, 524.)

*Black, Graves & Stayton,* of Austin, for plaintiff in error M. Burton, *H. S. Lattimore* and *Clark H. Willis,* both of Fort Worth, for plaintiff in error R. B. Roberson.

The Court of Civil Appeals, having reversed the judgment rendered by the district court against the Central Motor Company and having rendered judgment in favor of said defendant, erred in failing and refusing to reverse the judgment of the district court as to Burton and to remand the case to the district court for another trial as to him. Washington Gaslight Co. v. Landsden, 172 U. S. 534, 43 L. Ed. 543; American Indemnity Co. v. Martin, 126 Texas 73, 84 S. W. (2d) 697; Hamilton v. Prescott, 73 Texas 565, 11 S. W. 548.

*John B. McNamara,* of Waco, for defendant in error, Central Storage Company.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This is a suit for damages for false imprisonment brought by R. B. Roberson against M. Burton and Central Motor Company. On jury answers to special issues, the trial court rendered judgment for Roberson against the defendants, severally, for $4,000.00 actual damages and against Central Motors Company for $25.00 exemplary damages and against Burton for $50.00

exemplary damages. The Court of Civil Appeals at Fort Worth reversed and rendered the judgment as to Central Motor Company but affirmed it as to Burton. 154 S. W. (2d) 180.

■ Both Burton and Roberson applied for a writ of error, the latter asking it only in the event Burton's was granted. Both applications were granted; but Roberson failed to file the required writ of error bond, so Burton's is the only appeal before us.

He assigns five points of error which together seem to present two general propositions, namely, (1) that since the Court of Civil Appeals reversed and rendered the judgment as to Central Motor Company, it should for that reason alone have reversed and remanded the case as to him; (2) that the Court of Civil Appeals erred in holding that the trial court did not err in permitting Roberson to prove the size of the place of business of Central Motor Company.

On January 9, 1939, Roberson bought from Central Motor Company a used car, paying $50.00 cash and agreeing to pay the balance in "substantial" monthly payments beginning February 6. Roberson was living in and working out of Waco, and the Motor Company claimed it was understood that the car was not to be driven outside McLennan County. This Roberson disputed. Be that as it may, Roberson's job "played out" on January 20, and he went to his mother's home in Fort Worth, where he began looking for another job. He defaulted on the car payment due February 6, and the Motor Company started an investigation to locate him and the car. Failing in that, J. N. Mitchell, the president of the Motor Company, had Burton called to the Company's office. Burton was chief detective of the police department of the City of Waco. Mitchell testified that he told Burton about the car deal with Roberson, showed him the file and credit reference relating to the same and asked Burton if he had had any success in locating "skip-outs"; that when Burton replied "many," he said, "We want this man located in order that we can repossess our car"; that he did not instruct Burton to file any complaint against Roberson and did not know that any complaint had been filed until several days after the car was returned to the company. Burton's testimony on these points was substantially the same as Mitchell's. He said that no one connected with the Motor Company requested him to arrest Roberson but that they did ask him to take such steps as he saw fit in locating Roberson. Homer Casey,

constable at Waco, testified that on February 9 Burton called him on the telephone and asked him "to get out a warrant for him on this Roberson, that he had swindled an automobile, and wanted a charge of over fifty with him (sic), and he gave me some information about the man taking the automobile away from there and bringing it here to Tarrant County or something, and he said he wanted to get a warrant for him, that he wanted to go locate him." Pursuant to this conversation and on the same day, Casey swore to, and filed with the justice of the peace at Waco, a complaint, the charging part of which was: "that heretofore, to-wit, on or about the 6th day of January, A. D. 1939, and before making and filing of this complaint, in the County of McLennan, and the State of Texas, R. B. Roberson did then and there *unlawfully embezzlement over $50*, against the peace and dignity of the State." (Italics ours). The justice of the peace testified that a warrant was issued on this complaint but that it was never delivered to Burton or to any other officer. In fact, it appears never to have left his office, and the jury found that it was never issued. After being advised that the warrant had been issued, and on the same day, Burton wrote the chief of police, at Fort Worth, describing the car and Roberson and requesting that he arrest Roberson. The letter stated, "This man obtained possession of the above described automobile through fraud and a warrant has been issued for his arrest. If you are able to apprehend Roberson, please take possession of the above automobile and hold for this department." Upon receipt of the letter, the police authorities at Fort Worth arrested Roberson and placed him in jail, where he remained until he was turned over to Burton the next day. While in custody in Fort Worth, Roberson was finger printed and a record was fowarded to the Department on Public Safety, at Austin, and to the Federal Bureau of Investigation, at Washington. When advised of Roberson's arrest, Burton called Central Motor Company and said he was going for Roberson and would be glad to take anyone whom the company wished to send to bring back the car. The company sent a negro, who accompanied Burton and returned the car to Waco. Burton brought Roberson to Waco, where, after a conference with the assistant district attorney, Roberson executed bill of sale to Central Motor Company on the car. Thereupon the "embezzlement" case was dismissed and Roberson was released from custody.

Under the facts stated, it cannot be seriously questioned that a tort was committed against Roberson. Nobody could success-

fully contend that Roberson had committed the offense of embezzlement in his handling of the car or that the complaint filed was sufficient to allege that offense. In fact, no contention is made by Burton that the evidence does not establish a case against him. His proposition is that he should have a new trial because his alleged joint tort feasors, Central Motor Company, has been acquitted by the judgment of the Court of Civil Appeals, on the ground that the damages awarded by the jury were in an amount larger than they would be if he were tried anew as the sole defendant.

■ We thing it is a well recognized principle of law that if one person knowingly joins with another in an enterprise which he should foresee will result in injury to a third person, he is responsible not only for his own acts done in accomplishing the end sought but for all such acts of his associate as well as for the results attained. Wolf v. Perryman, 82 Texas 112, 17 S. W., 772. Although our precise question was not there raised, Justice Critz, quoting 26 R. C. L., p. 763, sec. 13, announced the general Texas rule in McBeath v. Campbell, 12 S. W. (2d) 118, as follows: "It is, and has long been, a generally recognized rule that there is no line of separation between the liability of joint tort feasors. The tort is a thing integral and indivisible, and any claim for injuries arising therefrom runs through and embraces every part of the tort. The liability of one cannot be carried into any portion of the joint tort that is not followed by an equal liability of the other tort feasors. Each is liable for the whole, and the injured party may pursue one separately, or he may pursue all jointly or any number less than the whole number."

■ Nevertheless, the question before us is not free from difficulty, because the rule at common law was that a verdict against tort feasors could not be set aside as to one and permitted to stand as to the other. The reason for this rule was that under the old practice a *venire facias de novo* was awarded and no notice was taken of the first venire, or of the proceedings under it, so that upon the granting of a new trial as to part of the defendants, there remained nothing on record to support the verdict against the other. See note, 27 L. R. A. (N. S.), p. 209 et seq. The reason stated does not exist under our practice, and there has been a radical departure in our American jurisprudence from the common-law rule to the extent that only in a few jurisdictions is it presently adhered to without

modification. "The decided trend of modern opinion does not permit the artificial and technical reasoning upon which this common-law rule is founded to preclude the granting of new trial as to one of several joint tort feasors, where furtherance of justice seems to require such action and the interests of the remaining defendants are not thereby prejudiced." 39 Am. Jur., p. 49, sec. 25.

■ The concluding language of the quotation just written, "and the interests of the remaining defendants are not thereby prejudiced," which is recognized as sufficient to require application of the common-law rule, is referred to in some cases as "the substantial injustice which we think might be the result if we were to permit judgment to be entered upon the verdict" as against one defendant when it is reversed as to the others. See, for example, Washington Gaslight Co. v. Landsden, 172 U. S., 534, 19 Sup. Ct. 296, 43 L. Ed. 543. In that case the defendant as to whom the judgment was reversed and rendered was a corporation, and the plaintiff proved that over a course of years it had paid from four hundred thousand to six hundred thousand dollars per annum in dividends to its stockholders. The evidence was admitted, over objection, for the purpose of furnishing the jury a basis upon which to calculate exemplary damages, yet the trial court did not limit it to that purpose in his charge. The Supreme Court said that this evidence was inadmissible as to the individual defendants; that "while a defendant who is least to blame is still liable for all the damages suffered by plaintiff, he is not liable to respond in punitive damages, the amount of which may be based upon particular evidence of the wealth of some other defendant."

With respect to the *Landsden* case, supra, it is said in the annotation beginning on p. 970, L. R. A., 1918c, that, as a matter of course, the rule there announced will be followed when to hold otherwise would prejudice the interests of some of the defendants, but that the common-law rule has, in many jurisdictions, either been relaxed by judicial decisions or modified or entirely superseded by statute. This annotation presents an interesting discussion of the various applications which had been made both of the rule and the "substantial injustice" exception in our several American jurisdictions.

Although we do not adhere generally to the common-law rule, it is manifest that the "substantial injustice" exception has properly been recognized and applied in some cases. But we believe it is patent in all of them that the verdict

was larger on account of the conduct or the financial condition of the acquitted defendants. That is to say, they are cases wherein the acts, if any, committed by the defendant as to whom a new trial was ordered played a minor part in causing the plaintiff's damages, as in Eddy et al v. Powell, 49 Fed., 814, Strang v. Griffith, 109 Fed. 597, Albright v. McTighe et al, 49 Fed., 817, and Harrington v. Lee Merc. Co. et al, 97 Mont. 40, 33 Pac. (2d) 553; or they are cases wherein there was testimony that the acquitted defendant was wealthy, which was not provable against the others, as in Strand v. Griffith, supra, and in Courtney v. American Ry. Exp. Co., 120 S. Car. 511, 113 S. E., 332, 24 A. L. R. 128.

American Indemnity Co. v. Martin et al, 126 Texas 73, 84 S. W. (2d) 697, is an outstanding Texas case applying the exception. Martin sued his brother for damages sustained by him in an automobile accident, the automobile being driven by his brother's wife. The indemnity company had issued to the defendant brother a policy of indemnity insurance covering the automobile. The policy provided that the company could not be sued until its liability had been determined by final judgment against the insured or by prescribed agreement. The trial court overruled the company's plea of misjoinder and judgment was rendered against both Martin and the indemnity company for $7,000.00. Martin did not appeal. The Court of Civil Appeals sustained the trial court's action on the plea of misjoinder but reversed the judgment as between plaintiff and the indemnity company on other grounds, leaving the judgment against Martin undisturbed. The Supreme Court held that the indemnity company was improperly joined and reversed the judgment; but to give effect to its order it clearly had also to reverse the judgment as to Martin. As Judge Hickman said, "When an assignment of error is sustained and the appellant or plaintiff in error can be given the full measure of relief to which he is entitled in no other way than a reversal of the judgment between nonappealing parties, then such reversal will be ordered." Since the indemnity company had to pay the judgment against Martin, if it had been permitted to stand, it would have been a plain case of substantial injustice to leave the same undisturbed as Martin clearly was relying on the indemnity contract to keep him whole. An analogous case is Hamilton & Co. v. Prescott, 73 Texas, 565, 11 S. W. 548.

■ The "substantial injustice" exception being clearly recognized by our courts, it only remains for us to determine whether

it must be applied to the judgment against Burton. He contends that the same is greater than it would be were the case tried with him as the sole defendant. We think the record clearly shows that this proposition is untenable.

With malice defined as "a wrongful act knowingly and intentionally done without reasonable cause," the jury found that Burton acted with malice in requesting the arrest of Roberson and that the officials of the motor company acted with malice in seeking Burton's assistance. With exemplary damages defined as damages allowed in addition to actual damages as punishment for malicious acts, the jury, answering separately as between the two defendants, awarded $25.00 exemplary damages against the motor company and $50.00 against Burton. We think this clearly shows that the jury recognized that Burton was the principal actor against Roberson and that it would follow, as a matter of course, that the presence of the motor company as a defendant with him did not augment the ward of actual damages.

Concretely, Burton claims that it would be substantial injustice to him to permit the judgment against him to stand because the wealth of his co-defendant, the motor company, was shown at the trial, thus seeking to invoke the principal announced in Washington Gaslight Co. v. Landsden, supra. This contention is based on the fact that in Roberson's cross examination of one Speer, the employee of the defendant motor company who called Burton to the original conference which resulted in Roberson's arrest, it was shown that the motor company had approximately twenty employees and was housed in a building which was a block long, about fifty feet wide, and partly two-story.

In the first place, we do not regard this as any substantial proof that the motor company was wealthy. In the second place, we think the testimony was properly admitted and that it would be admissible, under the same circumstances, should a retrial be ordered for Burton alone.

The basis of the motor company's grievance against Roberson was that he took the car out of McLennan County in violation of his contract of purchase. Roberson contended that it was understood that his work would require him to drive it to distant parts of the State. In an effort to prove his contention, he testified that a few days after its purchase he drove the car to the Rio Grande valley and that he burned out a

bearing at Edinburg, which resulted in his incurring a repair bill of "seventeen dollars and some odd cents"; that, since he had a ninety-day guaranty on the car and since such repair bill would make it very difficult for him to meet his deferred payments, when he got back to Waco he told "either the service manager or Mr. Mitchell or the bookkeeper" about his misfortune at Edinburg and that it was agreed "that they would make some adjustment on it." When on cross examination he was rather severely taken to task as to the identity of the person to whom he talked on this occasion and as to where he was in the building when he talked to such person, Roberson testified that "I told my story to everybody there, from the office back to the foreman in the shop," and that when he told his story to the foreman "he referred me to somebody else, and I told them my story and they referred me to somebody else," but he could never identify the person to whom he talked and with whom he had his alleged understanding. It was in an effort to explain and excuse this failure that the testimony as to the number of employees of the motor company and the size of its building was offered and such reason was so stated to the trial court by Roberson's counsel at the time. The testimony was admissible for that purpose.

Furthermore, we have examined Burton's exceptions to the court's charge as well as his requested instructions and we find no request that the testimony be limited to such purpose by the jury in their consideration of it. Olvey et al v. Jones et al, 137 Texas 639, 156 S. W. (2d) 977.

Moreover, we believe that the record in this case supports the conclusion that Burton and the motor company fully recognized that the circumstances made theirs a common cause, that the wrong charged against them was something integral and indivisible, and that the liability of neither could be carried into any portion of their alleged tort, if not followed by an equal liablity of the other. See McBeath v. Campbell, supra. Until the Court of Civil Appeals held that there was no case against Central Motor Company and it became necessary for Burton to file a motion for rehearing, the two defendants made a joint fight. Until that time they were (with absolute propriety) represented by the same counsel. They filed a joint answer. They filed joint exceptions to the court's charge. Together they tendered ten requested special issues. Although each filed (in identical language) an original motion for a new trial,

they joined in a single amended motion and together excepted and gave notice of appeal when it was overruled. One appeal bond was executed by both as principals. They filed a joint brief in the Court of Civil Appeals, each praying that the judgment of the trial court be reversed and rendered, or in the alternative, that it be reversed and remanded. Finally, at no time in the trial court did Burton complain at being tried with the motor company. Although he did join with it in a motion that it be awarded judgment *non obstante veredicto,* and presumably, therefore, knew that no case had been made against it, he made no complaint on that ground by motion for a mistrial nor did he raise the question in his motion for a new trial or otherwise. Without meaning to say that the same would probably have been sustained, we note that he filed no plea of misjoinder. (See Frey v. Ft. Worth & R. G. Ry. Co., 86 Texas 465, 25 S. W., 609). Surely these facts conclusively demonstrate that Burton had no thought in the trial court that he was being done any injustice in being joined as a defendant with Central Motor Company.

Under all these circumstances we do not believe it can fairly be said that any substantial injustice would result in letting the judgment stand as to Burton. So we are constrained to hold that the general rule, as stated in McBeath v. Campbell, supra, must be applied. See, also, Sparrow v. Bromage, 83 Conn. 27, 27 L. R. A. (N. S.), 209, 74 Atl., 1070; 41 Tex. Jur., p. 375, sec. 18; 62 C. J., p. 1136, sec. 49; 20 R. C. L., p. 224, sec. 9.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court July 15, 1942.

Rehearing overruled October 7, 1942.