**ZALE JEWELRY CO. v. JARMAN.**

No. 2790.

Court of Civil Appeals of Texas. Eastland.

March 3, 1950.

Rehearing Denied March 24, 1950.

858

E. Byron Singleton, Amarillo, for appellant.

Fred C. Chandler, Colorado City, for appellee.

GRISSOM, Chief Justice.

Parker Jarman, a resident of Mitchell County, sued Zale Jewelry Company, a corporation, with its principal office in Dallas County, in Howard County, for damages caused by his alleged unlawful arrest in Howard County, which arrest, Jarman alleged, was caused by the jewelry company's agents in Howard County. The jewelry company filed a plea of privilege asserting the right to be sued in Dallas County. Jarman filed a controverting affidavit in which he alleged the right to maintain the suit in Howard County under exceptions 9 and 23 to Article 1995. Upon a trial to the court, the jewelry company's plea of privilege was overruled and it has appealed.

Mr. Jarman testified that he saw a watch in Zale Jewelry Company's show window in said company's store in Big Spring, Howard County, Texas, managed by Mr. Vic Alexander; that he had a check on the Engine Life Company for $218.73; that he told a clerk that he would buy the watch if the company would cash his check; that the clerk repeated this to the cashier; that the cashier said she would be glad to cash the check if she had enough money; that she took the check and went to the rear of the store and stayed thirty or forty minutes; that she returned and told Jarman that "she couldn't find anything on the company in Kermit." The check which Jarman wanted to cash was drawn on a bank in Colorado City. It was signed Engine Life Company by I. C. Jarman and was payable to the plaintiff, W. P. Jarman. On one end of the check was printed "Engine Life Company, Kermit, Texas." The check was presented to the jewelry company on March 28, 1949. It was dated "3-29-49." The check bore a notation showing that it was paid to Jarman as a commission. The word "commission" was misspelled.

When Mr. Jarman was told by the cashier that she could not find anything on the company in Kermit, he said that he told her, "I guessed not, the business firm wasn't in Kermit any more, in Odessa;" the cashier then said she would be glad to call Odessa. Mr. Jarman testified that he then pulled a card out of his pocket with the telephone number of the Engine Life Company "and everything on it" and said to the cashier, "No, that I had to go other places, and I didn't feel she could benefit. She said it wasn't costing me anything to call, and she had plenty of time, and I took my check and walked out;" that he stood in front of the store for five or ten minutes, waiting for his wife, when a policeman walked up; that the policeman asked his name, where he worked, who the policemen were in Colorado City, who the sheriff was and asked if Jarman had any identifications; that Jarman pulled out his billfold and showed his license to the policeman and "told him I had a check I tried to cash in Zale's;" that the policeman took the check and took him in Zale's and telephoned for the "wagon;" that by the "wagon" he meant police car; that the policeman then told him to "go with him, which I would have done as long as they had the check," and the policeman then took him to the police station; that when they walked in the police court somebody got up out of a chair; asked him his name, where he lived, and told him to be seated. Mr. Jarman said that he waited "quite a while" and then the police came back and asked him his oldest brother's name and the name of a brother that had died and "they," evidently meaning some policeman, left and told him to talk to the Chief of Police. Then someone told him the police had called

the Colorado City bank and found the check was all right and discharged him.

The Chief of Police testified that a lady at Zale's called him over the telephone and he sent a policeman there; that this lady said there was a "subject" came in to Zale's to buy a watch and tried to pay her with a check which she said she was trying to check on; that he took the check and walked out. She told the Chief of Police about the date on the check and the way the date was written and that the word "commission" was not correctly spelled; that the check was presented one day previous to its date and that the person who signed the check was named Jarman and the payee was W. P. Jarman. He further testified that he called the Colorado City Bank and learned the check was good and discharged Mr. Jarman. He further testified that he had previously asked the jewelry company and other merchants to cooperate with the police department on checks and to report to him if a check did not look all right or if they did not know the person presenting a check and that he "would do the rest;" and that all Zale's did was to report the facts. The Police Chief and others testified, without dispute, that the lady who called the Chief of Police from Zale's Jewelry store merely stated to him the facts relative to the check and Mr. Jarman's actions, particularly the fact that the check was dated the day following the day it was presented to the jewelry company; that it was signed Engine Life Company by I. C. Jarman and payable to W. P. Jarman whose address was shown on the check as Kermit, Texas; that the telephone operator could not find this company in Kermit, and that the word "commission" was misspelled.

The record shows that when a policeman arrived at Zale's after the telephone conversation he asked Mr. Alexander, the manager of the store, where the man was who presented the check and that Alexander pointed to Mr. Jarman, who was standing in front of the store. There is no evidence that anyone connected with the jewelry store directed or requested Mr. Jarman's arrest, lawful or otherwise.

█ It was unquestionably the right and duty of the employees of said store to report to the police the facts relative to an attempt to cash a check under circumstances indicating a forgery or other violation of the law. In this connection, see Central Motor Co. v. Roberson, Tex.Civ. App., 154 S.W.2d 180, 183, affirmed Burton v. Roberson, 139 Tex. 562, 164 S.W.2d 524, 143 A.L.R. 1, and Hamilton v. California Co., Tex.Civ.App., 103 S.W.2d 200, 204. The testimony here shows that Zale's employees did nothing more than report the facts. It is, therefore, insufficient to show a cause of action against appellant. Meyer v. Monnig Dry Goods Co., Tex.Civ.App., 189 S.W. 80, 82, Writ Ref.; Price v. Lovejoy, Tex.Civ.App., 88 S.W.2d 785; Schnaufer v. Price, Tex.Civ.App., 124 S.W.2d 940, 942, Writ. Ref.

█ The evidence is insufficient to show that any agent of the jewelry company was responsible for any wrongful arrest or imprisonment of Mr. Jarman. The evidence was insufficient to show a cause of action against Zale Jewelry Company. Venue cannot be sustained in Howard County under exception 9, Article 1995, because the evidence does not show a crime or trespass committed there by Zale Jewelry Company. City of Mineral Wells v. McDonald, Chief Justice, 141 Tex. 113, 170 S.W.2d 466, 469. Venue in Howard County cannot be sustained under exception 23, Article 1995, because, under the 1943 amendment thereto, Vernon's Ann.Civ.St. art. 1995, subd. 23, plaintiff was required to allege and prove, among other things not proved, a cause of action against the jewelry company. Jackson v. Hall, Chief Justice, 147 Tex. 245, 214 S.W.2d 458; East Texas Motor Freight Lines v. Jackson, Tex.Civ.App., 216 S.W.2d 686.

The judgment is reversed and the cause remanded.