## WEIDMER et al. v. STOTT.
### No. 12628.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 13, 1932.

Rehearing Denied March 12, 1932.

E. M. Mann and Raymond M. Myers, both of Wichita Falls, for appellants.

Jno. M. Martin and C. M. McFarland, both of Wichita Falls, for appellee.

DUNKLIN, J.

R. T. Weidmer, J. L. Dashner, and George Dashner, doing business as partners under the trade name of Texas Electric Company in the city of Wichita Falls, and engaged in operating a filling station for the purpose of selling to the public gasoline and oil and automobile tires and repairing cars and changing and repairing automobile tires, had in their employment J. C. Stott. On about September 9, 1930, Stott undertook, as part of the duties of his employment, to change tires on an automobile by using a jack to raise the car. He instituted this suit against the members of the partnership to recover damages for injuries which he alleged were sustained by him while so engaged by reason of being struck in the stomach by the lifting lever of the jack when the jack slipped. According to his further allegations, the slipping of the jack was the result of its defective condition, in that it was an old secondhand, obsolete jack, practically worn out, with the catches and lugs so badly worn as to make it dangerous. His claim for damages was based upon a charge of negligence on the part of the defendants in furnishing him the jack for use in that defective and dangerous condition. The defendants have prosecuted this appeal from a judgment in favor of the plaintiff.

The judgment was based upon findings of the jury upon special issues submitted to

them; the amount of the verdict returned and for which judgment was originally rendered being $2,710.50. But, upon complaint made by the defendants in their motion for new trial of misconduct of the jury, the court found that the jury was guilty of misconduct, and by reason thereof required the plaintiff to remit the sum of $1,355.25, which remittitur was duly filed, and thereupon the judgment originally rendered was reduced in that sum, leaving a final judgment for plaintiffs in the sum of $1,355.25. And thereupon the motion for new trial was overruled.

The record shows that, upon the hearing of the motion for new trial, the defendants introduced as witnesses four of the jurors who took part in the trial of the case. It appears conclusively from the testimony of those jurors that the plaintiff was allowed attorney's fees which were included in the amount of damages awarded; and the trial judge so found, but further concluded that the remittitur required would cure the verdict of that taint. Some of the jurors stated that one-half of the amount of damages shown in the verdict was allowed to cover plaintiff's attorney's fees, while the testimony of others was somewhat indefinite as to the amount that was allowed for attorney's fees.

L. W. McCrory, foreman of the jury, testified in part as follows:

"There was some discussion in the jury room during the time that we were making up our minds with reference to this verdict about attorney's fees. It is my remembrance that one of the jurors expressed the opinion that Mr. Stott would have to pay attorney's fees out of any verdict which was rendered in his favor, and that in all probability he would not obtain the medical and surgical services that he required, unless an amount was rendered sufficient to cover both. By 'both' I mean doctor's bills and attorney's fees. It is my remembrance that there was somewhat of a general discussion on that point about the attorney's fees, and that more than one participated therein. I do not recall that there was any statement made as to the amount that the attorneys would get other than what I have already stated.

"I originally had in mind the sum of $1,000.00; I finally agreed to a figure of $2,710.50. I could not name any one specific thing that influenced me in bringing it up from $1000.00 to $2,710.50. The general discussion about the jacks, the personal experiences, and the attorney's fees were the things that influenced me in bringing my verdict up, this general discussion in the jury room."

Another juror, C. I. Halford, testified in substance that he first concluded that plaintiff should be awarded $3,500 damages, and that he thought that the doctors and attorneys should get one-half of that sum, but

that later he agreed with the other jurors in the verdict rendered.

Another juror, J. S. Doss, testified in part as follows: "In arriving at this verdict we did take into consideration attorneys' fees. According to our figures and all I believe that we just estimated the attorneys' fees at fifty per cent. Think we allowed something like fifty per cent of the amount recovered for attorneys' fees. We wanted to make the man whole, and we gave him fifty per cent; I think that is right."

Another juror, J. W. Parker, testified in part as follows:

"There was something—we figured $1,300.00 and some odd dollars that he was supposed to get, and that was to take care of his family. We figured that $1,300.00 for the operation and the wages. As to the balance of it, we supposed that the attorneys wanted something, and if he did not get it there, he could not get it at all.

"We allowed him something over $1,300.00 for his medical attention and his wages, and as to the balance, we did not know whether his attorneys would get it or not. We had no idea about how much the attorneys' fees would be; we figured enough in so that they would get a little something."

▮ Misconduct of the jury was thus definitely established, and under the decisions of the Commission of Appeals in St. Louis Southwestern R. Co. v. Lewis, 5 S.W.(2d) 765, same case on rehearing, 10 S.W.(2d) 534, and City of Waco v. Darnell, 35 S.W.(2d) 134—in each of which it was held that a verdict tainted with misconduct of the jury was not cured by a remittitur filed—the judgment of the trial court must be reversed. According to the rule announced in those decisions, in order to overrule the assignment based on such misconduct, it must clearly appear that the appellant has suffered no injury by reason thereof. We cannot say that the remittitur required by the trial judge was sufficient to cure the vice in the verdict rendered; especially so since the testimony of all the jurors left it uncertain and indefinite as to just how much the jury finally agreed to allow for attorneys' fees.

In St. Louis S. W. R. Co. v. Lewis (Tex. Com. App.) 10 S.W.(2d) 534, in an opinion by Justice Critz, the following was said: "With reference to the tender of remittitur, it will be noted that the defendant in error has offered to remit $3,500 of the $8,500 judgment, centending that such amount of $3,500 covers all of the verdict that can possibly be tainted by any misconduct of the jury, and that the verdict to the amount of $5,000 is in all events free from taint of such misconduct, and properly arrived at. In this connection it will be further noted that, according to the record, it is shown that, at the time the misconduct of the jury occurred,

the jury had already reached an agreement resolving all issues submitted to them in the court's charge in favor of the defendant in error, Lewis, except they had not agreed on the amount of damages; and on this issue the lowest jurors were contending for $5,000, and the others for higher amounts. Under this state of the record, we are unable to say that a remittitur of the part of the judgment in excess of $5,000 would cure the error and eliminate the taint of misconduct, for the reason that to so hold would, in effect, be holding that, had the misconduct not occurred, the jury would have reached a verdict for an amount at least as great as that contended for by the lowest juror, and this we cannot hold, for the reason that we have no way of knowing that the jury would have reached a verdict at all, had said misconduct not occurred, even if it be conceded that the jury was not likely to have agreed on a verdict in an amount less than that contended for by the lowest jurors."

See, also, Texas & P. Ry. Co. v. Van Zandt (Tex. Com. App.) 44 S.W.(2d) 950.

In this connection it is to be noted that there was introduced by plaintiff a copy of a letter written by his attorneys and addressed to the defendants before the suit was instituted, demanding payment of the claim, and stating that "Mr. Stott has assigned to us an interest in his claim against you for damages by reason of said injuries, and has employed us to file suit for him against you if necessary to recover damages for him by reason of the injuries complained of." The only objection made by defendants to the introduction of the letter was that prior notice had not been served upon them to produce the original. The subsequent admission by one of the defendants that it was a true copy would perhaps destroy the force of that objection. However, the record shows that the letter was introduced for no other purpose except to rebut the testimony given by one of the defendants that he never heard of the plaintiff's claim that he had been injured until after the suit was instituted. Notwithstanding that there is an absence of any showing in the record of a request from defendants' counsel that the letter be limited to the purpose for which it was introduced, the trial court did not submit to the jury any instruction which would have authorized them to allow attorneys' fees; the issue of damages being confined to loss of time, medical treatment, hospital bills, etc.

The foregoing conclusion renders it unnecessary to discuss in detail several other proceedings which have been assigned as error, since probably the objections thereto made here will be avoided upon another trial. However, by way of suggestion to the trial court, we will briefly refer to some of those questions.

■ We cannot say, as insisted by appellants, that the testimony of John Williams as to complaint of injury by the plaintiff shortly after the alleged accident was not res gestæ and therefore admissible.

■ We believe that the letter referred to above, written by counsel for plaintiff to the defendants, containing the statement that an interest in the cause of action had been assigned to them, should be excluded upon another trial.

■ The testimony of doctors who testify with respect to damages claimed for medical treatment, hospital bills, and nurse's hire should be confined to the reasonable value thereof.

■■ The issue of whether or not the jack did slip, as claimed by the plaintiff, and whether or not he was injured by reason thereof, should be submitted separately rather than by combining both of those in a single issue, as was done by the trial judge. In this connection, we will add that we cannot say that the assignment to the form of that issue would be reversible error, in the absence of any testimony pointed out in appellants' briefs to show that evidence introduced made those disputed issues of fact; the burden being upon the appellants to show harmful error.

■ Whether or not the jack was defective in the particulars alleged in plaintiff's petition should be submitted to the jury, and, if those defects did exist, then the further issue should be submitted as to whether or not they rendered the jack unsafe for use. The court merely submitted the issue whether or not the defendants had furnished a "safe jack" or a "defective jack" to the plaintiff, without mentioning the defects alleged as a cause of that unsafe condition.

■ If damages are to be allowed for medical treatment, hospital bills, or nurse hire, those damages must be limited to the reasonable value of those items, and the jury should be so instructed.

For the error pointed out, the judgment of the trial court is reversed and the cause remanded.

BUCK, A. J. (dissenting).

The majority opinion reverses and remands this cause upon the misconduct of the jury. It is with regret that the writer finds himself unable to agree with the majority in the conclusions reached in Justice DUNKLIN'S opinion.

The jury rendered a verdict for $2,710.50. Upon the hearing on defendants' motion for new trial, the trial court concluded that any effect that the discussion of plaintiff's counsel's fee, would be cured by a remitter of one-half of the verdict of the jury and the judg-

ment theretofore rendered, and finds in his findings of fact on this hearing that said discussion did not affect said verdict to a greater extent than 50 per cent. of the recovery. The writer thinks that the testimony of the jurors who were interrogated on appellants' motion for rehearing certainly sustains the trial court's conclusion that such remitter cures any injury done the defendant below by this discussion. Certainly, if the trial judge had found upon sufficient evidence that the misconduct did not occur, the writer thinks that this court should sustain the finding. Sandifer v. Fort Worth Nat. Bank, 8 S.W.(2d) 512, by this court, writ of error refused. But the trial court found that the misconduct did occur, but that, under all the facts, such misconduct only involved the counsel's fee, and he permitted the counsel to file a remitter to the extent of one-half of the recovery. He found that said discussion did not affect said verdict except as to the counsel's fee. The writer is of the opinion that under the facts set out in the majority opinion, taken from the testimony of the four jurors who were examined on the motion for rehearing, the trial court's conclusion is supported by ample evidence.

Owing to the lack of further time to investigate the authorities, the writer respectfully enters his dissent. It is his opinion that the judgment as finally rendered should be affirmed.

### On Motion for Rehearing.

#### DUNKLIN, J.

Only four of the jurors testified at the hearing of the motion for new trial. They could not know to what extent the other eight jurors were influenced by the discussion of attorneys' fees. That fact furnishes a further reason for our conclusion that it cannot be said that it was shown beyond a reasonable doubt that the remittitur filed removed all taint from the verdict.

The motion for rehearing is overruled, also the motion to certify; it appearing that the Supreme Court has jurisdiction of an application for writ of error to the judgment here rendered. Great Atlantic & Pac. Tea Co. v. Willson (Tex. Sup.) 45 S.W.(2d) 554.

#### BUCK, J.

I cannot concur with the majority in overruling the appellee's motion for rehearing.

In Houston & T. C. Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606, the Supreme Court, speaking through Chief Justice Brown, said: "The judge who tried the case seems to have acted promptly and fairly in the investigation, and we know that he could form safer conclusions from examining the jurors than this court can from the record. There is much in looking at the man who testifies."

In Bendelin v. Thompson, 33 S.W.(2d) 220, 222, the El Paso Court of Civil Appeals said:

"The testimony of the jurors as to whether they had previously decided how the case should terminate and were answering the interrogatories to bring about such result is very conflicting, and the trial court, having heard the witnesses testify, was in a much better position to judge of their credibility and the weight to be given to their testimony than we could possibly be from a mere examination of the record. * * *

"Matters relating to the conduct of a trial are largely within the discretion of the trial court, and rulings on these matters will not be disturbed by a reviewing court except for a manifest abuse of discretion. * * *

"This principle applies to rulings of the trial court on the matter of misconduct of the jury."

In International Great Northern Ry. Co. v. Cooper, 1 S.W.(2d) 578, 580, by the Commission of Appeals, approved by the Supreme Court, it is said: "The trial court heard evidence as to the amount of the verdict tainted with misconduct, and found that a remittitur of $7,500 would cover any possible portion of said verdict so tainted. The finding of the trial judge is abundantly supported by the evidence, and his findings should not be disturbed, unless the evidence leaves it reasonably doubtful as to whether the amount remitted was sufficient to cover the part tainted."

See Galveston Electric Co. v. Biggs, 14 S. W.(2d) 307, by the Galveston Court of Civil Appeals. In that case the trial court found that $2,118 of the verdict was not tainted with misconduct, and suggested a remittitur down to that amount, which was duly filed.

The writer is of the opinion that the former judgment should be set aside and the judgment of the trial court affirmed, or, at least, that the cause should be certified to the Supreme Court.