ROOSTH & GENECOV PRODUCTION COMPANY, INCORPORATED,
v. LOREN LEE WHITE ET AL.

No. A-4176. Decided November 4, 1953.
Rehearing overruled December 2, 1953.
(262 S.W. 2d Series 99)

620

*Gladney & Stephen,* of Henderson, *J. Byron Saunders,* of Tyler, *Strasburger, Price, Kelton, Miller and Martin* and *Hobert Price,* all of Dallas, for Petitioners.

The Court of Civil Appeals erred in affirming the action of the trial court in submitting over the objection of Roosth & Genecov Production Company, the issue as to whether or not the servants of Roosth & Genecov should have knowledge of the condition of the derrick at the time it was furnished for use, in the absence of competent evidence warranting such submission and that such issue was in the alternative and would not require a unanimous verdict of the jury. Also in sustaining the trial Court's action in overruling Roosth & Genecov, motion to instruct counsel not to inquire or mention that the corner block (which it was alleged caused the accident) was discarded and replaced after the accident. Southern Oil Co. v. Church, 74 S.W. 797; City of Fort Worth v. Lee, 182 S.W. 2d 831; Blickman v. Chilton, 114 S.W. 2d 646.

*Gordon R. Wellborn, Rex Houston, T. A. Bath and Dean W. Turner,* all of Henderson, for respondents.

In reply to the contentions of petitioners, respondents cite City of Houston v. Lurie, 148 Texas 391, 224 S. W. 2d 871; Smith v. Henger, 148 Texas 456, 226 S.W. 2d 425; Young v. Hahn, 69 S.W. 203.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Our petitioner, Roosth & Genecov Production Company, Inc., defendant below, seeks relief from a judgment (on a verdict) awarding damages to the respondent-plaintiff White for personal injuries incident to the collapse of an oil well drilling derrick, owned by the petitioner-defendant, but actually erected on its leasehold by respondent-defendant, A. M. Sale, under "independent" contract between these two parties, and in use at the time of the accident by Carter Jones Drilling Company, which was the employer of respondent-plaintiff White and was drilling the well in question under "independent" contract with petitioner-defendant. The Workmen's Compensation Insurance carrier of the drilling company, as intervenor, participated in White's recovery and occupies the same position as he. The decision of the Texarkana Court of Civil Appeals, affirming the above-mentioned judgment, (Williams, Justice, dissenting) is reported in 257 S.W. 2d. 140, and referred to for a more detailed statement of the facts. It should be noted, however, that the petitioner-defendant did not own the lease but stood virtually in the shoes of the owners under an agreement entrusting the former with full operation and control so far as the owners were concerned.

The first two points on which we granted the writ of error arise via objections of the petitioner-defendant to the special issues (answered unfavorably to it) enquiring whether the petitioner-defendant, "its agents, servants and employees knew, *or, by the use of ordinary care, should have known* the condition of the completed derrick as it stood on Curbo No. 17, at the time it was furnished for use in plaintiff's employment"; whether the derrick *"was defective"* and "defective to the extent that it was inherently dangerous"; and whether "the furnishing of such defective derrick for use in plaintiff's employment" (if found) was negligence and a proximate cause of White's injuries. (The underscoring to the quoted portions of the charge is supplied by us). The questions thus presented are of both substance and form.

The one of substance involves the words "or, by the exercise of ordinary care, should have known" in the issue first above quoted, and is posed by the petitioner's contention that under Southern Oil Co. v. Church, (1903) 32 Texas Civ. App. 325, 74 S. W. 797, 75 S. W. 817, writ of error refused, "the petitioner here owed no duty to White" (being the employee of an independent contractor) "other than not to intentionally or wilfully endanger him or knowingly furnish him agencies inherently dangerous." If the quoted proposition is correct, the "should have known" portion of the charge was unjustified, and, indeed, the state of the evidence may require a rendition of judgment in favor of the petitioner.

The decision mentioned is rather a "white horse" case, about the only difference between it and the instant case being that in the former it does not appear that the defendant leaseowner caused it's defective derrick to be placed on the well site (for use of the drilling contractor) by an independent construction contractor, as did the petitioner in the instant case. The reasons given in the Church case for denying liability were that, notwithstanding the fact of carelessness of the defendant in furnishing a derrick that was dangerously defective, there was no evidence of control by the defendant over the operations of the drilling contractor and no proof that a derrick is "inherently dangerous," (that is, dangerous in its normal or non-defective state, like explosives or poisons) which clearly it is not. The facts of the Church case are closer in point than those of the much later decision in Smith v. Henger, 148 Texas 465, 226 S. W. 2d. 425, 20 A. L. R. 2d. 853, on which the respondent-plaintiff greatly relies. Smith v. Henger grew out of the construction of a large building and was clearly a case of dangerous premises (as distinguished from a defective apparatus) with a deep hole or shaft deceptively covered with a mere tarpaulin. The rule there applied to hold the defendant liable to the servant of an "independent" contractor working on the premises was that the owner or other occupier of the premises as a whole, such as a general contractor, or, in the particular case, a construction supervisor and coordinator acting for the owner, owed the servant the duty not only to warn him of hidden dangers known to the occupier, but also to use ordinary care to ascertain that such dangers existed. The idea of "inherent danger" was evidently not considered as relevant to the case, and the liability of the defendant was regarded as inconsistent neither with his lack of control over the details of the work of the contractors nor with the further fact that they must have had at least some con-

trol over the places at which their respective parts of the work were carried on. The element of "control" as discussed in Smith v. Henger was *not* with regard to whether the defendant had usurped the functions or possession of the various contractors, but whether, in view of his peculiar position as a mere supervisor and coordinator for the owner, which itself made all the contracts, he could yet be said to stand in the shoes of the owner, as a general contractor would, with respect to liability as an occupier of the premises.

While, as stated, the facts of the Church case are peculiarly similar to those of the instant case, the former is inconsistent with Smith v. Henger, if we but assume that the derrick may be treated as "premises" or part thereof, and, therefore, the Church case would have to yield. At the time the latter was decided (1903) our "refusal" of a writ of error did not involve approval of the opinion of the Court of Civil Appeals, so no clear conflict between our own holdings could be said to be involved. Indeed, since the theory of Smith v. Henger was that the defendant in that case owed a duty of due care to furnish a safe place of work to the servants of the contractors because the defendant occupied a position analogous to a general contractor, such a duty is all the more evident in situations like those of the Church case and the instant case, in which the defendant was not a "supervisor," but actually made the only contracts appertaining to the well, supplied its own derrick and numerous essential materials and itself undertook performance of various essential tasks incident to the work. If the defendant in Smith v. Henger could be treated as a general contractor, the defendants in the Church and instant cases undoubtedly should be.

■ And if we concede that it involves too violent an assumption to treat the Church case as one involving the duty of a possessor of premises to an invitee, that decision yet appears to conflict with the more modern rule with reference to liability of a supplier of chattels for personal injury resulting from defects therein. According to the American Law Institute, a duty of inspection to forestall personal injury exists on the part of one who supplies chattels to another for a use in which the supplier has a business interest and extends to the servants of an independent contractor to whom the chattel is supplied. Restatement, Torts, Sec. 392, Comment e, Illustration 1. The fact that an identical duty exists on the part of the independent contractor as master of the servant in question "* * * does not, however, relieve from

liability the original supplier of the chattel who by his failure to inspect it has permitted it to go out of his hands in a dangerous condition." Id. Sec. 393, Comment a. The duty of the supplier is likened to that of an occupier of land to an invitee. Id. Sec. 392, Comment b, p. 1066. The view of the Restatement clearly does not entail the requirement that the chattel in question be an explosive or other "inherently dangerous" substance or that the work for which it is destined be of an "inherently dangerous" character, such as blasting. The rule of the Restatement is evidently in accord with the decision of at least several of the older and larger states. See, for example, McGlone v. Williams Angus, Inc., 248 N. Y. 197, 161 N. E. 469; Gray v. Boston, R. B. & L. R. Co., 261 Mass. 479, 159 N. E. 441.

The Church case has lately been referred to as a "harsh rule". Allbritton v. Sunray Oil Corp., D. C., 88 F. Supp. 54, 57, aff'd. 187 F. 2d. 475 (5 Cir). While no doubt it had more support in general authority when it was decided than it has now, we would hardly be disposed to follow it, even aside from Smith v. Henger, supra. The Texas decisions—and, indeed, several of those from other states—cited in the former are, in our judgment distinguishable from it on the facts. In the latest of them, Galveston H. & S.A. R. Co. v. Nass, 94 Texas 255, 258, 59 S.W. 870, 871, the court took note of, but expressly refused to decide, the above discussed question of the duty of inspection on the part of the supplier of a chattel in favor of the servant of another to whom it is supplied, Justice Brown observing that the authorities on the point "are quite conflicting".

It could not be validly urged in the instant case that even to disregard the Church case is not to impose a duty of inspection on the petitioner, since the derrick here was erected (reassembled) on the well site by the erecting contractor Sale. Conceding that such an intervention of an independent contractor might under some circumstances relieve the supplier of a chattel from the duty in question, it would not do so in the instant case. The arrangement between the petitioner and Sale was not that Sale should supply a proper derrick, but that he should dismantle, transfer and re-erect an old one of the petitioner. Assuming the materials to have been defective—and there was at least some evidence that they were—the situation is substantially the same as if the resulting defective derrick were supplied without the intervention of Sale. We thus are not called on to say whether the duty of the petitioner would have existed, had he not furnished the materials, although there is good authority that it

would exist. Restatement, Torts, Sec. 393, Comment A, Illustration 2.

■ We hold with the Court of Civil Appeals that there was no error in the charge in so far as it imposed the duty of inspection of the derrick on the petitioner.

The point of form in connection with the jury issues first above mentioned is that the defective character of the derrick was in effect submitted globally in one issue and without even mention of any of the several particular items of defectiveness pleaded respectively as separate counts of negligence in some 21 separate paragraphs of the respondent's petition and presented in evidence, much less a separate submission as to each item. Tending to support the petitioner are decisions such as Fox v. Dallas Hotel Co., 111 Texas 461, 240 S. W. 517; City of Ft. Worth v. Lee, 143 Texas 551, 564, 186 S. W. 2d. 954, 961, 159 A.L.R. 125; Solgaard v. Texas & N.O. R. Co., 149 Texas 181, 185, 229 S. W. 2d. 777, 779; Weidmer v. Stott, Texas Civ. App., 1932, 48 S. W. 2d. 389, 391, wr. of er, refused; and Kress & Co. v. Jennings, Tex. Civ. App., 64 S. W. 2d 1074, appl. for wr. of er. dism. The respondent-plaintiff counters with quite recent holdings such as City of Houston v. Lurie, 148 Texas 391, 224 S. W. 2d. 871, 14 A.L.R. 2d 61, and others, to which might be added Howell v. Howell, 147 Texas 14, 210 S. W. 2d. 978. See also Mr. McDonald's examples of contrasting decisions in his Texas Civil Practice, Sec. 12,09, p. 1068-9. The same author observes that, "The Texas decisions are, therefore, in understandable conflict." Id. Sec. 12.18, p. 1103-4. The problem is also reflected in thoughtful discussions by William C. Harvin ("Ultimate or Controlling Issues in Texas," 25 Tex. L. Rev. 391) Prof. Masterson ("Special Issues in Texas," 6 S. W. L. J. 163, 169) and others, including 41b Tex. Jur., Secs. 452 et seq. The view is suggested that the trend is toward reducing the number of special issues by grouping greater numbers of disputed factual points in a single issue, and both City of Houston v. Lurie, supra, and Howell v. Howell, supra, might be said to bear this out. The former approved a general submission of whether a particular building was "a fire hazard," notwithstanding the city's detailed allegation of different defects which, severally or collectively, would make it such. Howell v. Howell, submitted a general issue of cruel treatment in the language of the divorce statute, notwithstanding allegations of particular actions on the part of the defendant which, severally or collectively, would constitute cruel treatment. On the other hand, in

Fox v. Dallas Hotel Co., supra, (111 Texas 461, 240 S.W. 522) Justice Greenwood condemned an issue "asking whether Fox was 'guilty of contributory negligence in his conduct in, around, or about the elevator, or the shaft thereof, prior to or at the time he was injured,' " because the defendant had pleaded sundry different acts of contributory negligence at the time and place stated. In City of Ft. Worth v. Lee, supra, ( 143 Texas 551, 186 S.W. 961) we disapproved a general question as to the negligence of the city in maintaining a street at a point where it more or less intersected a deep railroad right of way cut. According to the evidence, the street led close up to the cut and then turned off in another direction, there being no sign, barrier or lights to prevent night transients from proceeding into the cut by failing to make the turn. The plaintiff had a separate allegation of negligence on the part of the city with regard to each of the respective precautionary measures mentioned, and the issue in question was condemned for having "presented general negligence, in view of Mrs. Lee's allegations of specific negligence * * *." The holding in Weidmer v. Stott, which we approved, condemned a charge because "the court merely submitted the issue whether or not the defendants had furnished a 'safe jack' or a 'defective jack' to the plaintiff, without mentioning the defects alleged as a cause of that unsafe condition" and directed that, on the next trial, "whether or not the jack was defective in the particulars alleged in plaintiff's petition should be submitted to the jury, and *if those defects did exist, then the further issue should be submitted as to whether or not they rendered the jack unsafe for use.*" (48 S.W. 2d 391). (Italics supplied). The purport of the underscored words is that as to each particular fact (e.g. a particular broken or worn part) said to render the whole instrument unsafe, its existence should be the subject of a separate issue.

■ It may appear somewhat metaphysical to say, on the one hand, that allegations of specific facts or defects resulting in a "fire hazard" or "cruel treatment" are no obstacle to submitting the general issue of "fire hazard" or "cruel treatment" as one jury issue and, on the other hand, that similar allegations as to conduct resulting in negligence require each such allegation to be made the subject of a separate issue. In the two former instances it could hardly be said that the fire hazard or cruel treatment would not have existed except by concurrence of all, or even two or more, of the particular supporting facts alleged. And thus in the same instances some of the jurors might well have made their answer to the general issue believing that par-

ticular fact A, and it alone, was true, while other jurors made the identical answer *disbelieving* the evidence of fact A, but believing the proof of fact B or fact C. It may also be conceded that the purpose of the plaintiff in pleading specific facts is more to give the defendant a fair disclosure of the nature of the case than to commit the pleader in advance to a particular plan of jury issues. Nor should cases like the Fox case be distinguished from cases like the instant one or City of Houston v. Lurie on the ground the former involved *acts* or positive conduct, while the latter dealt with a condition resulting from acts. Certainly Weidmer v. Stott, 1932, is inconsistent with such a theory, and City of Ft. Worth v. Lee, which was decided after adoption of the Rules of Civil Procedure, would seem to be also. The latter case involved the condition of a street, and the underlying specific allegations seem to be largely matters of *omission*. Moreover, as actually evidenced by the pleadings in the instant case, most conduct can be reasonably described in terms either active or passive (e.g. failure to furnish a safe appliance in that a broken bolt had not been replaced or, on the other hand, furnishing an appliance which was unsafe in that the defendant had used a broken bolt therein). The Rules of Civil Procedure do not define the term "controlling issues" used in Rule 279, and although the Fox case was decided well before adoption of the Rules of Civil Procedure, the bar would probably be quite surprised if in a new Fox case, the modern word "controlling" should be taken to justify the charge which Justice Greenwood roundly condemned. Certainly the term "all the issues" in old Art. 2190 R.C.S. did not require the submission of evidentiary issues. It is noteworthy that the late decisions which seem to reverse the older practice are not in negligence cases. In the latter we understand the almost universal practice at the bar of this state to be that of specific issues. To change it drastically by judicial decision would in our judgment cause undue confusion. To sustain the charge in the instant case would logically mean a drastic change in all negligence submissions because, as stated, we do not perceive a sound—or at least workable—distinction between separate allegations of specific defects in an instrumentality furnished and separate allegations of specific "acts" of negligence. We hold it was reversible error to submit the issues in question in the form used and that on the next trial separate issues should be submitted for each item of defectiveness alleged and proved. At the same time we do not consider that we are overruling City of Houston v. Lurie or Howell v .Howell, or even limiting their effect in cases other than those of negligence to which they might be applicable.

■ Our writ of error was granted also on the point of allegedly improper admission of evidence offered by the respondent White. This evidence is to the effect that when the derrick was again re-erected (following the accident) a particular foundation block, which the respondent had alleged to have been such as to render the derrick previously defective, was discarded and replaced with another. The point was raised by petitioner's counsel both by motion at the beginning of the trial to exclude such evidence if presented and by ample objections made when the evidence was offered. Nor can it be said that the objection was waived by such defensive steps as the petitioner took by way of cross-examination and explanatory testimony once the objectionable evidence was admitted. Both parties properly concede the existence of the rule that evidence of repairs or precautions taken by a defendant after an accident is inadmissible to establish negligence of the defendant based on the previous condition of things as to which the repairs were made or precautions taken. See Texas Law of Evidence, McCormick & Ray, Sec. 503. The rule is largely one of policy and good sense to avoid discouraging safety measures, but is inapplicable where the evidence would be valid as to other issues which also exist in the case. McCormick & Ray, supra. In this latter connection, the respondent contends that there was an issue as to which of two foundation blocks, including the defective one, slid or gave away, and which of the two was resting on soft ground. As to this, it is enough to say that the replacement of the old block is actually not evidence on either issue, and that if it could be said to be remotely probative, the remoteness is too great to justify its admission, considering that it was not admissible on the issue of negligence.

■ We have thus far dealt with the case only as between the petitioner-defendant and the respondent-plaintiff. As to the respondent-codefendant, Sale, who reconstructed the derrick, the plaintiff of course, prayed for judgment against him, and the petitioner also prayed for judgment over against him, if he should be found negligent which petitioner primarily pleaded that he should not be. On the one count submitted against Sale, the jury (despite its findings of negligence on the part of the petitioner!) found that his failure to warn the plaintiff of defects in the derrick was not negligence, and the trial court accordingly rendered judgment in his favor. The petitioner appealed the entire judgment, but did not attack it in so far as it absolved Sale, nor did the plaintiff as appellee attack it by cross-assignment. The Court of Civil Appeals affirmed the en-

tire judgment, without making special reference to Sale other than to note that he had been absolved by the verdict. In this court neither the petitioner-defendant nor the respondent-plaintiff asks relief, conditional or otherwise, as against Sale or attack the judgments below in so far as they affect him—and this despite his recorded contention here that the judgments below should be affirmed as to him. Under these circumstances we apprehend no injustice in leaving the judgments below undisturbed as to Sale, while reversing them and remanding the cause for a new trial as between the petitioner, Roosth & Genecov Production Company, Inc. and the respondent Loren White. Rule 503, Tex. R. Civ. Proc. Burton v. Roberson, 139 Texas 562, 164 S. W. 2d. 524, 143 A. L. R. 1. It is so ordered.

Opinion delivered November 4, 1953.

Rehearing overruled December 2, 1953.