Mary Felder NEALE et al., Appellants,

v.

R. W. KIRKLAND et al., Appellees.

No. 17934.

Court of Civil Appeals of Texas, Dallas.

Sept. 28, 1972.

---

Stanley E. Neely, Kenneth F. Jones, Locke, Purnell, Boren, Laney & Neely, Dallas, Charles E. Schuerenberg, Leake & Schuerenberg, Mesquite, Shelton W. Booth, Dallas, for appellants.

Thomas W. Luce, III, Jenkens, Spradley & Gilchrist, Dallas, for appellees.

GUITTARD, Justice.

This suit concerns $42,500 in currency unearthed by appellee Robert Kirkland while digging a ditch in a new industrial development in northwest Dallas. The soil in which the money was found had been hauled in from other locations to raise the level of the land. Claimants included the heirs of W. D. Felder, Sr., from whose home place a substantial amount of earth had been hauled to the area where the money was found, the widow and children of Oliver Letot, who had resided and owned land near the place of discovery, the owners of the development, and others. The trial court rendered judgment on a verdict for Kirkland, the finder. Only the Felders and the Letots appeal.

We reverse and remand because we hold that the court erred in failing to submit to the jury requested issues inquiring whether the Felders and the Letots were owners of the currency in question, and in submitting instead evidentiary issues which imposed on them an unnecessary burden.

## THE DISCOVERY

The industrial site where the money was found, designated as Walnut-Stemmons Industrial Park, consisted of sixty acres of low-lying land. The land had been used as a dumping ground for a long time, and since about 1964 signs erected by the own-

ers along Walnut Hill Lane had encouraged the public to dump dirt and rocks there in order to bring up the grade. Later the owners made deals with contractors to bring in dirt and level it for an agreed amount per cubic yard.

On May 31, 1971 a contractor engaged to lay a storm sewer was excavating a trench in the right-of-way of a projected street. Appellee Kirkland was operating the excavating machine. He testified that he was digging in soft earth when his machine brought up a bundle of bills. The next bucketful came up with a "whole bunch of money." He and other workmen picked up the bills and went down into the hole where they found a broken glass fruit jar and a metal lid. According to Kirkland, the money and glass were found in fill dirt at a depth of approximately three feet. After gathering up the money, he telephoned the sheriff's office and turned the money over to two deputies who came to the scene.

### THE FELDERS' CLAIM

Among the sites from which dirt had been brought was the home place of W. D. Felder, Sr., at Turtle Creek Boulevard and Cedar Springs Road in Dallas. Felder had lived in this home from about 1911 until his death in 1938. His wife died in 1935. His son, W. D. Felder, Jr., continued to live there until about 1969. The Felders' evidence shows that W. D. Felder, Sr. was a man who handled large sums in cash, that in 1955, several deposits of paper currency aggregating approximately $190,000 were found in thermos jugs and a glass jar beneath the dirt floor of the basement of the house, that Felder had always kept the basement door locked, that both the currency found beneath his house and that now in question were in packages with wrappers bearing the stamp or imprint of the Federal Reserve Bank of New York, that Felder made frequent trips to New York City and did business with New York banks, that the currency in question was dated in 1928 and 1929, and that after the

property was sold by W. D. Felder, Jr., and the other heirs, the soil beneath the basement was excavated and 28,044 cubic yards of dirt from the Felder place was dumped at the Walnut-Stemmons Industrial site. The contractor who supervised the excavation and dumping testified that the fill dirt at the location where Kirkland found the money came from the Felder home place.

### THE LETOTS' CLAIM

Oliver Letot originally owned more than twelve hundred acres of land east of the tract now designated as Walnut-Stemmons Industrial Park. In 1934 the Letot family moved to a house on a remaining portion of this land, and they continued to live there after Oliver Letot's death in 1950. The Letot land had originally included Forest Lawn Cemetery, which was west of the Letot residence and several hundred feet east of the Walnut-Stemmons tract. Shady Trail Lane was a public road running along the west side of the cemetery. William Owen, a friend of the Letot family, testified that in a conversation between him and Oliver Letot on the front porch of the Letot residence, Letot pointed toward Forest Lawn Cemetery and said, "I buried a lot of money over there behind the cemetery." Letot's widow, Inez Letot, testified that before they moved to this location she had discovered a large number of fifty-dollar and one hundred-dollar bills in two shoe boxes in a closet at their former home and that after they moved she searched for the money but never saw it again. She also testified that she had used half-gallon jars of the type found with the money and had kept such jars around the house.

The foreman employed by the contractor who did the widening work on Shady Trail Lane testified that in 1968 or 1969 he removed 10,000 to 20,000 cubic yards of dirt from the right-of-way, including that part of the right-of-way beside the cemetery, and moved it to the vacant land to the west, which the owners wanted leveled up.

## THE SPECIAL ISSUES

The trial court submitted nine special issues. Issue 1 inquired whether the currency in question was "lost property," which was defined as "property which the owner has involuntarily parted with through neglect, carelessness or inadvertence." Issue 2 inquired whether the currency was "mislaid property," which was defined as "property which the owner intentionally places where he can again resort to it." In answer to these issues the jury found that the currency was lost and not mislaid.

Issues 3, 4, and 4A concerned claimants other than the present appellants. Issue 5 was as follows:

"Do you find from a preponderance of the evidence that Oliver Letot, Sr. intentionally placed the currency in question in the land which is today the right-of-way of Shady Trail Lane, Dallas, Texas?"

To this issue the jury answered "We do not," and, under the court's instruction, did not answer issue 5A, which inquired whether the currency so placed by Letot was thereafter removed to the land where it was discovered.

Similarly, issue 6 was as follows:

"Do you find from a preponderance of the evidence that W. D. Felder, Sr. intentionally placed the currency in question in the land at the north intersection of Turtle Creek Boulevard and Cedar Springs Road in Dallas, Texas?"

The jury likewise answered this issue, "We do not," and did not answer issue 6A, which inquired whether the currency so placed by Felder was thereafter removed to the land where it was discovered.

The Felders objected that issues 6 and 6A were evidentiary and requested the following issue, which was refused:

"Do you find from a preponderance of the evidence that Mary Felder Neale and the other Felder Heirs are the owners of the currency which is the subject matter of this suit? Ownership may be inferred from possession, dominion and other attendant circumstances even though not continuous."

The Letots made similar objections to issues 5 and 5A, and urged that the proper inquiry was whether Oliver Letot "owned" the currency.

## OPINION

■ We hold that the Felders' requested issue should have been given instead of issues 6 and 6A, and that the Letots' objections to issues 5 and 5A should have been sustained. Ownership of the money was the "controlling" issue, which should have been submitted under Texas Rules of Civil Procedure 279 with respect to both the Felders and the Letots. The circumstances under which it was buried and removed to the place where it was found were merely evidentiary. Douglass v. Wallace, 211 S. W. 530 (Tex.Civ.App., El Paso 1919, no writ).

■ Appellee Kirkland contends that the Felders' requested issue was properly refused because there was no evidence that the Felders or their parents owned the money, and because ownership is a question of law depending on factual elements which should have been submitted.

We do not agree that the Felders presented no evidence of ownership. Their evidence as above summarized, though circumstantial, was sufficient to justify a jury in finding that the money belonged to W. D. Felder, Sr., and after his death, to his heirs. They did not have the burden of proving his title and theirs by showing how the money came into his hands. Circumstantial proof of his possession raised a presumption of ownership. Cathey v. Shields, 385 S.W.2d 889 (Tex.Civ.App., Austin 1965, writ ref'd n. r. e.).

■ Neither do we agree that the requested issue was objectionable as submitting a question of law. Our Supreme Court has held that the term "owner" in a

special issue is a word in common use which need not be defined. Pritchett v. Highway Ins. Underwriters, 158 Tex. 116, 309 S.W.2d 46 (1958). We recognize that ownership should not be submitted to a jury if it is wholly a question of law, and that when ownership depends on an alleged transfer of title, the controlling issues to be submitted are those concerning the facts of such a transfer. The cases cited by appellee are of that sort.[1] They are not applicable here because title to the money as between Felder and someone with whom he dealt is not in issue. This case involves a claim of ownership as against a finder, which may be established by circumstantial proof of prior possession without evidence of how such ownership was originally acquired. Consequently, the broad issue of ownership as requested by the Felders was a proper issue for the jury. A similar issue would have satisfied the objections raised by the Letots.

■ The main thrust of appellee's argument is that the requested issue is too broad and general. We do not agree. As Prof. Hodges points out, the problem with an issue phrased in general language is whether it inquires about too great a portion of the factual picture and covers several matters each of which should be submitted in a separate issue.[2] In a statement quoted with apparent approval by the Supreme Court of Texas,[3] Prof. Hodges says:

"Since Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99 (1953), it is quite clear there will be no reversal in non-negligence cases simply because the issue is too broad or too small. The trial court has almost complete discretion, so long as the issue in question is unambiguous, and confines the jury to the pleading and the evidence."[4]

This view is in accordance with numerous decisions upholding various broadly worded issues in non-negligence cases.[5] Consequently, we do not think the requested issue is too broad.

■ However, neither the Felders nor the Letots are entitled to reversal merely on a showing that issues inquiring whether they were "owners" of the money could properly have been submitted within the

1. Southern Pine Lumber Co. v. Hart, 161 Tex. 357, 340 S.W.2d 775 (1960) (adverse possession); Worth Tool & Die Co. v. Atlantis Electronics Corp., 398 S.W.2d 656 (Tex.Civ.App., Dallas 1965, no writ) (purchase); Davis v. Clements, 239 S.W. 2d 657 (Tex.Civ.App., Austin 1951, writ ref'd n. r. e.) (gift); Lehman v. Barry, 126 S.W.2d 499 (Tex.Civ.App., Waco 1939, writ dism'd jdgmt. cor.) (gift).

2. Hodges, Special Issue Submission in Texas, § 36 (1959).

3. Haas Drilling Co. v. First Nat'l Bank, 456 S.W.2d 886 (Tex.Sup.1970).

4. Hodges, op. cit. supra note 2, § 35 (Supp.1969).

5. Grieger v. Vega, 153 Tex. 498, 271 S.W. 2d 85 (1954) (issue inquiring whether killing was wrongful, with elements of wrongfulness and defense submitted by explanatory instructions); City of Houston v. Lurie, 148 Tex. 391, 224 S.W.2d 871 (1949) (issue submitting whether building was "fire hazard" without inquiring about specific conditions); Howell v. Howell, 147 Tex. 14, 210 S.W.2d 978 (1948) (statutory divorce ground of "cruel treatment" submitted without particular acts); Hough v. Grapotte, 127 Tex. 144, 90 S.W.2d 1090 (1936) (issue of domicile rather than separate issues of residence and intent); Neuhoff Bros. Packers, Inc. v. McCauley, 399 S.W.2d 929 (Tex.Civ.App., Waco 1966, writ ref'd n. r. e.) (general issue of "nuisance" with definition rather than separate issues on flies, noise, odor and dust); Brown v. Brown, 256 S.W.2d 143 (Tex.Civ.App., Beaumont 1953, writ ref'd n. r. e.) (single issue of common law marriage with instructions concerning elements of agreement, cohabitation, and holding out); Viduarri v. Bruni, 179 S.W.2d 818 (Tex. Civ.App., San Antonio 1944, writ ref'd w. o. m.) (single issue of adverse possession including statutory elements).
The historical basis for the different practice in negligence cases is explained in Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99 (1953).

trial court's discretion. They must also show that they were prejudiced by the language of the issues which the trial court did submit. We hold that the evidentiary language of issues 5 and 6 was prejudicial. Issue 6 imposed an unnecessary burden on the Felders because it required them to obtain an affirmative jury finding on specific evidentiary matters not essential to their claim, namely, whether W. D. Felders, Sr. personally buried the money and whether he intended to do so. Regardless of how Felder or his heirs may have parted with possession, their claim of ownership, if established, would be superior to that of the finder Kirkland and of the owners of the property where the money was found. Since only circumstantial evidence was available, the jury could only draw inferences as to how the Felders parted with possession. Issue 6 was unduly restrictive in that the jury may well have concluded that they had to answer issue 6 in the negative because the evidence did not convince them specifically that Felder "intentionally placed the currency in question in the land at the north intersection of Turtle Creek Boulevard and Cedar Springs Road." This unnecessary burden may have been decisive, because if the Felders' requested issue of ownership had been submitted, the jury could have based an affirmative finding on the more general inference that if the money was found in soil hauled from the place where the Felders had resided for almost sixty years, it probably belonged to them.

■ This prejudice is not so apparent with respect to the Letots, since their claim rests more particularly on evidence that Oliver Letot did intentionally bury the money. However, we find that both the Felders and the Letots were prejudiced by the evidentiary language because it imposed on them an additional burden when considered in context with the other issues. By inquiring whether Letot and Felder "intentionally placed" the money in the ground, issues 5 and 6 submitted substantially the same question concerning the distinction between "lost" and "mislaid" property already submitted in issues 1 and 2. This distinction may have been important as between the finder Kirkland and the landowners,[6] but it was extraneous to the Felders' and Letots' claims, because an owner of property is entitled to recover it from a finder or the occupier of the place where it is found, regardless of whether it was originally "lost" or "mislaid." In view of the definitions in issues 1 and 2, the members of the jury could reasonably have concluded that if they found in answer to issues 1 and 2 that the currency was "lost" rather than "mislaid," they could not consistently find in answer to issues 5 or 6 that either Letot or Felder "intentionally placed the currency" in the ground. The prejudice lies in the probability that the answers to issues 5 and 6 were affected by

---

6. Since the landowners are not parties to this appeal, we do not decide whether the distinction between "lost" and "mislaid" property is controlling as between a finder and the occupier of private land on which money or other property is found. The trial judge evidently adopted that view, following certain language in the opinion of the majority of the Supreme Court in Schley v. Couch, 155 Tex. 195, 284 S.W.2d 333 (1955). However, that case does not establish that the finder is entitled to property found on private land, since its essential holding is that the occupier rather than the finder is entitled to possession of money discovered buried in the soil under circumstances indicating that it was intentionally deposited there, a situation quite different from the present case. Justice Calvert in a concurring opinion criticizes the classification of such property as "mislaid" because of the "strained presumption" that one who deliberately buries money later "forgets" where he put it.

Several learned writers have questioned the soundness of the distinction between "lost" and "mislaid" property on the ground that it requires cases to be decided on the subjective state of mind of the unknown owner. Cohen, The Finders Cases Revisited, 48 Texas L.Rev. 1001, 1010 (1970); Riesman, Possession and the Law of Finders, 52 Harv.L. Rev. 1105, 1121 (1939); Aigler, Rights of Finders, 21 Mich.L.Rev. 664, 668 (1923).

the answers to issues 1 and 2, although issues 1 and 2 were legally immaterial to the claims of both the Letots and the Felders.

Our holding here is supported in principle by H. E. Butt Grocery Co. v. Johnson, 226 S.W.2d 501 (Tex.Civ.App., San Antonio 1949, writ ref'd n. r. e.), in which the submission of unnecessary evidentiary issues was held to be prejudicial in depriving the defendant of a clear-cut submission of its defense.

■ Appellee objects to our consideration of the Letots' objections to issues 5 and 5A because of insufficiency of the seventh point in their brief which merely asserts: "The Trial Court erred in overruling Appellants Letots' Objections and Exceptions to the Court's charge." Although this point does not comply with the briefing rules, particularly Tex.R.Civ.P. 418, since it is general and complains of several different rulings, Rule 422 admonishes us that substantial compliance will suffice in the interest of justice and that for flagrant violations the court may require rebriefing. Appellee does not suggest that rebriefing be ordered. By looking to the statement and argument under this point we are able to determine the matters complained of with reasonable certainty. Consequently we have considered the merits of the question presented. Fambrough v. Wagley, 140 Tex. 577, 169 S.W. 2d 478 (1943); Cotten v. Republic National Bank of Dallas, 395 S.W.2d 930 (Tex. Civ.App., Dallas 1965, writ ref'd n. r. e.); Moore & Moore Drilling Co. v. White, 345 S.W.2d 550 (Tex.Civ.App., Dallas 1961, writ ref'd n. r. e.).

■ The Felders also contend that we should render judgment in their favor on

the ground that the evidence shows as a matter of law that they are the owners of the currency found by Kirkland. After study of the entire record, we overrule this contention. All of the evidence of the Felders' ownership is circumstantial. An ultimate fact is conclusively shown by circumstantial evidence only if the circumstances are so clear as to leave but one inference for reasonable minds to draw. Prudential Ins. Co. v. Krayer, 366 S.W.2d 779 (Tex.Sup.1963); Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972 (1951). We cannot say that reasonable minds can draw only one inference here.

Our holdings above stated require us to remand the case for a new trial with respect to both groups of appellants. We have no occasion to disturb the judgment below with respect to the unsuccessful claimants who did not appeal, including the landowners. Since their claims have been determined adversely, the new trial will involve no controversy between them and the finder. Consequently, the court need not submit issues inquiring whether the currency was "lost" or "mislaid." The only issues will be whether the Felders are the owners and whether the Letots are the owners.[7] If neither of these issues is answered in the affirmative, appellee as finder will be entitled to judgment.

We have examined the briefs and the record on all other points presented and conclude that they show no error in the rulings of the court.

The judgment is reversed and the cause is remanded with respect to appellants and appellee; otherwise the judgment is undisturbed.

7. Alternatively, if the court in its discretion prefers issues cast in more specific language, it may submit issues inquiring whether the currency in question was formerly in the possession of W. D. Felder, Sr., and whether it was formerly in the possession of Oliver Letot.

Answers to these issues would provide a basis for judgment under the rule that prior possession establishes a right superior to the claim of a finder. See Cathey v. Shields, 385 S.W.2d 889 (Tex. Civ.App., Austin 1965, writ ref'd n. r. e.); Cohen, op. cit. supra note 6, at 1022.